UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
**DARLENE A. ROSA**,                                         :
                                                             :
                Plaintiff,                                              :
                                                             :   **MEMORANDUM DECISION AND**
        – against –                                   :   **ORDER**
                                                             :
                                                             :   1:22-CV-1992 (AMD)
**KILOLO KIJAKAZI, ACTING**                                  :
**COMMISSIONER OF SOCIAL SECURITY**,                         :
                                                             :
                Defendant.                                              :
------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff challenges the Social Security Commissioner's decision to deny her Social Security Disability Insurance ("SSDI") under Title II of the Social Security Act. 42 U.S.C. § 401 *et seq*. For the reasons set forth below, I grant the plaintiff's motion, and deny the Commissioner's cross-motion.

## BACKGROUND

The Commissioner denied the plaintiff's application for SSDI benefits on September 14, 2017. (Tr. 106-117.) The plaintiff requested and was granted an administrative hearing before Administrative Law Judge ("ALJ") Hilton Miller. The ALJ denied the application in an April 17, 2019 written decision, and made the following findings:

> (1) the plaintiff last met the insured status requirements of the Social Security Act on December 31, 2018;
>
> (2) the plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of August 29, 2013, through her date last insured, December 31, 2018;
>
> (3) as of December 31, 2018, the plaintiff had the following severe impairments: bipolar disorder; depressive disorder, degenerative disc disease, sciatica, asthma, and seizure disorder with headaches;

> (4) through December 31, 2018, the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1;
>
> (5) the plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), with certain limitations.

(Tr. 7-21.)

On May 8, 2020, the Appeals Council found that the ALJ erred in two ways. First, although the ALJ gave "great weight" to the opinion of consulting physician Dr. Ram Ravi, "the limitations assessed by Dr. Ravi [were] more restrictive than those in the [RFC analysis]," including that the plaintiff could not "walk a block at a reasonable pace or on rough or uneven surfaces." (Tr. 101–02.) The Appeals Council also found that the ALJ gave "no explanation" "for not adopting those limitations." (*Id*.) Instead, the ALJ only discussed Dr. Ravi's opinion about the limitations posed by the plaintiff's asthma, and her general physical limitations. Second, the Appeals Council found that the ALJ should have addressed the records of the doctors who treated the plaintiff for migraines—Drs. Shye Wortman and Santapuri D. Rao—as those records "may corroborate the [plaintiff's] allegations." (ECF No. 17-1 at 1; Tr. 102.)

The ALJ held a second hearing on October 20, 2020, and issued another unfavorable decision on November 5, 2020. The ALJ adhered to his initial decision that the plaintiff had the RFC to do light work. He also considered evidence about the plaintiff's headaches, and re-evaluated Dr. Ravi's opinion; this time, however, he concluded that Dr. Ravi's opinion deserved only "partial weight." (Tr. 18.) The ALJ explained that his own RFC analysis was "more consistent with the medical record," because the plaintiff "showed an ability to walk and good range of motion in the hips," and because she "had also not shown a loss of muscle strength . . . or functioning of the upper extremities." (*Id*.) The ALJ also found that the plaintiff's "record

2

does not show any treatment from psychiatric medical provider." (Tr. 17.) Otherwise, his conclusions were substantially the same as the ones he reached in his first decision. He did not address either Dr. Wortman's or Dr. Rao's opinions. The Appeals Council denied the plaintiff's request for review on February 2, 2022. (Tr. 290-92.)[1] The plaintiff filed this action on April 7, 2022, alleging that the ALJ's "decision was not supported by the credible medical evidence and critical legal rules and standards were either not applied or applied incorrectly." (ECF No. 13 at 4.)

**I.      Summary of Medical Evidence Before the ALJ**

  *a.      The Plaintiff's Testimony*

The plaintiff, a postal clerk, hurt her back twice, both times after she bent down and lifted heavy objects. (Tr. 433-43, 496.) As a result, she had severe sciatica, limited ability to move, and migraines. (Tr. 36, 48-49.) The plaintiff consulted medical specialists for pain management, and was prescribed medications and regular injections, as well as nerve burning and nerve blocking procedures. (Tr. 35-36, 48-49, 52-53.) The plaintiff could sit or stand for only 15 to 20 minutes and could barely lift a gallon of milk. (Tr. 36-37, 53.) She also had asthma, bipolar disorder, anxiety and depression. (Tr. 448-86, 632-42, 701-12.) The plaintiff consulted psychiatrists, who prescribed several different types of medications over the course of a decade. The plaintiff had persistent migraines, which sometimes lasted for days and caused her to miss work. (Tr. 31.) None of the treatments provided her meaningful, long-term relief from any of her ailments. (Tr. 35-36, 52.)

  *b.      The Medical Record*

The plaintiff consulted multiple health professionals between November 2010 and March 2019. She first met with Dr. Santapuri Rao, a psychiatrist, in 2010, and saw him about once a

---

[1] The plaintiff did not cite the ALJ's failure to address Dr. Rao's or Dr. Wortman's opinions, nor did she challenge the ALJ's conclusions about Dr. Ravi's opinions.

month for the next two years. (Tr. 632-34.) In late January 2012, she saw Dr. Shye Wortman, an internist, for lower back pain, neck pain and migraines. (Tr. 579.) An MRI of her lumbar spine in December 2012 showed disc herniations touching the left descending nerve root at L4–5, and disc bulging at the T6–T9 region of the spine. (Tr. 496-97.) Over the next six years, Drs. Rao and Wortman treated the plaintiff for back pain, migraines, mood swings and anxiety. (Tr. 460-74, 635-39.)

In December 2016, the plaintiff saw Dr. John Reilly, an orthopedic surgeon, for back and hip pain. (Tr. 439.) He diagnosed the plaintiff with sciatica on her right side; an MRI showed mild degenerative changes of the spine. They discussed a pain management plan, including epidural injections. (Tr. 439, 443-44.) In mid-2017, the plaintiff returned to Dr. Wortman, complaining of lower back pain and numbness in her legs. (Tr. 545.) She had trouble moving her right hip, so Dr. Wortman referred her for another MRI. Dr. Wortman continued treating her in 2017 and 2018. (Tr. 543, 676.) During this time, the plaintiff also saw Dr. Brickell Quarles, a psychologist. Dr. Quarles concluded that the plaintiff:

> presents as one who would have severe limitations completing simple and complex tasks in a work environment due to her physical limitations and mood instability. Socially, she presents as one who would have moderate difficulty appropriately engaging with others including the general public, co-workers and supervisors. The [plaintiff] is likely to have difficulty maintaining a regular work schedule at this time due to her physical limitations and emotional issues.

(Tr. 541.)

In December 2018, the plaintiff consulted a neurologist, Dr. Miran Salgado, about her 40-year history of headaches. (Tr. 685.) Dr. Salgado prescribed different medications, including Botox injections for the migraines. (Tr. 690, 692-93.)

4

After a consultative physical exam in March 2019, Dr. Ram Ravi, an occupational medicine specialist, concluded that the plaintiff could not walk on her heels and toes, had a reduced range of motion in her cervical spine, lumber spine, shoulder, knee, and ankle, and that she should avoid bending because of her back pain.  (Tr. 651-61, 653-54.)  Dr. Ravi also concluded that the plaintiff could never climb stairs, ladders, or scaffolds; she could not balance, stoop, kneel, crouch, or crawl.  She could occasionally tolerate vibration, and never tolerate exposure to hazards, extreme temperatures, or respiratory irritants.  (Tr. 659-61.)  She could not walk one block at a reasonable pace on a rough or uneven surface, use standard public transportation, or climb a few steps at a reasonable pace without a single handrail.  (Tr. 661.)  And although the plaintiff had no limitation in sitting, and only a moderate limitation in standing, walking, pushing, pulling, lifting, and carrying (Tr. 18), according to Dr. Ravi, she would experience "[s]cheduled interruptions due to migraine headaches."  (Tr. 661.)  Finally, the plaintiff should avoid dust, smoke and other respiratory irritants because of her asthma, and avoid driving, operating machinery, heights and uneven surfaces because of seizures.  (*Id.*)

      c.     *The Vocational Expert*

Vocational Expert Sheri Pruitt testified that someone with plaintiff's residual functional capacity would not be able to work as a postal clerk or maintain a similar job (Tr. 43), but could work as an inspector and hand packager, a small parts assembler or a laundry folder.  (*Id.*)  However, she also testified that someone who is "off-task" 15 percent of the workday and absent from work two days a month would not be able to find or keep a job.  (Tr. 44.)

**LEGAL STANDARD**

A district court reviewing the final decision of the Commissioner must "determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's

5

decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). The court must uphold the Commissioner's factual findings if there is substantial evidence in the record to support them. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). However, the court will not defer to the ALJ's determination "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). Accordingly, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

A district court should remand if "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). "An ALJ does not have to state on the record every reason justifying a decision." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). But "when the ALJ's rationale is unclear in light of the record evidence, remand to the Commissioner . . . for an explanation of the ALJ's reasoning is warranted." *Gonzales v. Comm'r of Soc. Sec.*, No. 16-CV-8445, 2017 WL 7310391, at *8 (S.D.N.Y. Dec. 21, 2017) (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).

## DISCUSSION

The ALJ's decision on remand was not consistent with what the Appeals Council directed. *Martinez v. Comm'r of Soc. Sec.*, No. 18-CV-01570, 2019 WL 3852439, at *9

(S.D.N.Y. Aug. 16, 2019) (quoting *Carrillo v. Heckler*, 599 F. Supp. 1168 (S.D.N.Y. 1984) ("When a remand order specifically states the purpose for remand, 'it is the duty of the lower court or the agency from which the appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation.'")   Moreover, even if the Appeals Council had not given the ALJ specific instructions, the ALJ had a duty to make "explicit findings" and provide detailed reasons for his conclusions.  *Manago*, 321 F. Supp. at 568.  The ALJ's decision does not reflect this.

In his first decision, the ALJ gave Dr. Ravi's opinion "great weight," finding that Dr. Ravi took "adequate notice of the [plaintiff's] medically determinable impairments" and that his conclusions were "consistent with the record." (Tr. 91.)  Nevertheless, because he did not consider the limitations that Dr. Ravi placed on the plaintiff's ability to work, including her need for "scheduled interruptions due to migraine headaches" or the fact that she could not "walk a block at a reasonable pace or on rough or uneven surfaces" (*Id*. at 101), the Appeals Council remanded, directing the ALJ to reconsider Dr. Ravi's assessment of the plaintiff's limitations, and to provide reasons if he chose not to adopt the limitations.  Additionally, the Appeals Council directed the ALJ to consider records from Drs. Wortman and Rao that "may corroborate the [plaintiff's] allegations." (Tr. 99-113.)

On remand, the ALJ concluded that Dr. Ravi's physical evaluation of the plaintiff "supported [Dr. Ravi's] opinion," and was consistent with the plaintiff's "history of asthma and seizures," as well as the radiological reports showing "degenerations in the cervical and lumbar spine." (Tr. 18.)  However, the ALJ concluded that Dr. Ravi's opinion warranted only "partial weight," (*id*.), because, according to the ALJ, the plaintiff "showed an ability to walk and good range of motion in the hips" during treatment and had "not shown loss of muscle strength." (Tr.

18.) The ALJ did not give any further explanation for his decision not to adopt the limitations that Dr. Ravi determined were appropriate, and it is not clear why the ALJ concluded that these facts warranted reweighing Dr. Ravi's opinion. Because "[t]he ALJ's rationale is unclear in light of the record evidence," *Gonzales*, 2017 WL 7310391, at *8, the ALJ's decision must be remanded.

The ALJ also did not consider the opinion of or treatment records from Dr. Rao, the plaintiff's psychiatrist who treated the plaintiff for more than 10 years (Tr. 632-42, 701-12). Despite the Appeals Council's directive, the ALJ stated that the record "does not show any treatment from a psychiatric medical provider . . . ." (Tr. 17.) This is inconsistent with the record and warrants remand. *Martinez*, 2019 WL 3852439, at *9. In the first instance, the ALJ "[cannot] wholly disregard a medical source's opinion to the extent it otherwise contained competent evidence." *Samuel C. v. Comm'r of Soc. Sec.*, No. 21-CV-81-FPG, 2022 WL 17687820, at *3 (W.D.N.Y. Dec. 15, 2022); *see Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir.1983) (the Commissioner's determination "cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence"); *see also Johnson v. Bowen*, 817 F .2d 983, 985 (2d Cir.1987) ("Failure to apply the correct legal standards is grounds for reversal."). Further, on its own, a "failure to comply with the Appeals Council's remand order" is sufficient grounds for remand. *Dommes v. Colvin*, 225 F. Supp. 3d 113, 118 (N.D.N.Y. 2016).

Finally, the ALJ gave "little weight" to the opinion of Dr. Quarles, a psychological consultative examiner, who wrote that the plaintiff "presents as one who would have severe limitations completing simple and complex tasks in a work environment due to her physical limitations and mood instability." (Tr. 541.) According to the ALJ, "[w]hile this opinion was

8

supported by the mental status examination results, the opinion is not consistent with a claimant that sees her psychiatrist only four times a year . . . ." (Tr. 19.)[2] While generally "a consulting physician's opinions or report should be given limited weight," *Adesina v. Astrue*, No. 12-CV-3184, 2014 WL 5380938, at *9 (E.D.N.Y. Oct. 22, 2014) (internal quotations omitted), Dr. Quarles' opinion was corroborated by Dr. Rao, who treated the plaintiff for years. Dr. Quarles also corroborated the plaintiff's testimony about her inability to concentrate during—or even attend—work. The plaintiff testified that her frequent and debilitating migraines made it hard for her to work regular hours (Tr. 433-43, 448-86, 544-81, 646, 695-96, 768), and that she could not take care of herself or engage in family life (Tr. 38). The Vocational Expert testified that a person who was "off task 15% of the day" and "absent two days [per] month" would not be able to secure and keep a job. (Tr. 44, 57-58.)

Remand is therefore required so that the ALJ can reconsider Dr. Quarles' and Dr. Ravi's opinions, as well as address Dr. Rao's opinion, and explain the reasons for his evaluation of the weight their opinions deserve. *Best v. Comm'r of Soc. Sec.*, No. 18-CV-5751, 2020 WL 1550251, at *5 (E.D.N.Y. Mar. 31, 2020).

---

[2] There were years in which the plaintiff saw Dr. Rao more than four times a year. (Tr. 632-42, 701-12.)

9

## CONCLUSION

For these reasons, the plaintiff's motion for judgment on the pleadings is granted, and the Commissioner's cross-motion is denied. The case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

                                                  s/Ann M. Donnelly

                                                  ANN M. DONNELLY
                                                  United States District Judge

Dated: Brooklyn, New York
         August 1, 2023